COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | No. 08-15-00360-CV |
| | § | |
| | | Appeal from |
| IN THE INTEREST OF: S.P., A CHILD. | § | |
| | | 65th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 2013DCM5194) |
| | § | |
| | § | |

## **O P I N I O N**

This appeal is from a judgment terminating the parental rights of J.P., father, and M.C., mother, to their child, S.P. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

M.C. (Mother) has four children: eighteen-year-old T.C., seventeen-year-old S.C., C.P., and S.P. who was five years of age at the time of trial. J.P. is the father of both C.P. and S.P. This case involves only S.P., but the other children have been removed from Mother's home in the past.

On June 14, 2013, eighteen-month-old S.P. was found alone at 9:30 a.m. behind a restaurant. The child was dirty, her hair was matted, and she had urinated on herself. The El Paso Police Department searched for the child's parents around the restaurant and in the neighborhood for approximately an hour, but they were not immediately located. Some people

in the area directed the officers to an apartment where the child was believed to live, but no one answered the door. As the officers started to leave, a teenager approached them and identified himself as S.P.'s brother. The officers did not leave S.P. in her brother's care because he had already allowed her to wander away from the apartment. The police continued to search for S.P.'s parents and they found her mother, M.C., intoxicated in a bar around 4:00 p.m. that same day. When the officers informed M.C. (Mother) why they were looking for her, she was unconcerned and told them that she had left S.P. in the care of her son. The Texas Department of Family and Protective Services (the Department) removed the child and placed her at the Child Crisis Center.

The following day, Mother spoke with Maria McCord, an investigator with the Department, and told her that she was an alcoholic and she left the apartment that morning at approximately 7:00 to go to a neighborhood bar. Mother left S.P. in the care of the child's father, J.P., (Father). McCord also spoke with Father, who explained that he had been watching S.P., but he asked his step-son to watch S.P. while he went to the store. Father told McCord that S.P. had been in her playpen when he left the apartment. When he returned home at noon, S.P. was not in the apartment. Father told McCord that he did not look for her because he knew that S.P. played in the playground near the apartment. Father pointed in the direction of the playground, but McCord could not see it from the apartment. In McCord's opinion, it was not safe for a child of S.P.'s age to be playing alone in a playground. In contrast with what he told McCord, Father testified at trial that he was gone for only a half hour and he began searching for S.P. around the area. Father denied telling McCord that he did not look for S.P. or that she sometimes played unsupervised at the playground.

The Department filed suit on July 15, 2013 seeking to be made permanent managing conservator of S.P. if the child could not be safely reunified with either parent. The petition also sought termination of the parental rights of Mother and Father if reunification could not be achieved. The Department initially intended to return S.P. to her parents, and the parents were offered services. Both Mother and Father were required to participate in marriage counseling, parenting classes, anger management classes, and Alcoholics Anonymous. Mother was additionally required to undergo out-patient treatment for alcoholism through Aliviane. The parents complied with these requirements and S.P. was returned to her family under monitored supervision in May 2014. The Department removed S.P. on August 20, 2014 because both parents tested positive for the use of alcohol. Neither parent attended the permanency hearing held the following day. Mother began out-patient treatment for alcoholism through Aliviane, but she did not complete the program. Both parents were required to participate in anger management closes, but they failed to do so. Additionally, Father failed to complete a substance abuse evaluation and he also missed scheduled visits with S.P. The evidence showed that Father's parental rights to another child, C.P., had been terminated.

The Department filed its second amended termination petition in February 2015. It sought to terminate Mother's and Father's parental rights under Section 161.001(1)(D), 161.001(1)(E), and 161.001(1)(O). *See* TEX.FAM.CODE ANN. § 161.001(1)(D), (E), and (O) (West Supp. 2016). Additionally, the petition alleged that Mother had been convicted or placed on community supervision for the offense of endangering or abandoning a child under Section 24.041. *See* TEX.FAM.CODE ANN. § 161.001(1)(L). After a bench trial, the trial court entered judgment terminating the parental rights of both Mother and Father.

**MOTHER'S APPEAL**

A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id.* Both elements must be established and termination may not be based solely on the best interest of the children as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, no pet.).

In three issues, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that termination is in the child's best interest, that Mother knowingly placed or knowingly allowed S.P. to remain in conditions or surroundings which endanger the child's physical or emotional well-being, and that Mother engaged in conduct or knowingly placed S.P. with persons who engaged in conduct which endangers the physical or emotional well-being of the child. Significantly, Mother has failed to challenge the sufficiency of the evidence supporting the trial court's predicate termination finding under subsection O that she failed to comply with the provisions of a court order that specially established the actions necessary for the mother to obtain the return of the child. This unchallenged finding is sufficient to support the order of termination provided that the evidence is legally and factually sufficient to support the best interest finding. *See Perez v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 427, 434 (Tex.App.--El Paso 2004, no pet.).

### Sufficiency Standards

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a

reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the challenged findings. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### Best Interest - Legal Sufficiency

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d

at 927. The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) ("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the child. S.P. was five years of age at the time of the trial and there is no evidence indicating that she articulated her wishes. The record reflects that the little girl has been well-cared for by her foster family and she has bonded with them. Further, there is evidence that Mother's visitation with S.P. has been suspended because she missed visits with her. The evidence related to this factor weighs in favor of the trial court's best interest finding. *See In re U.P.,* 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied)(evidence that a child is well-cared for by her foster family, is bonded to her foster family, and has spent minimal time in the presence of her father and his family is relevant to the best interest determination under the desires of the child factor).

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. We will consider these factors together because the pertinent evidence is overlapping. The need for permanence is a

paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Texas Department of Protective & Regulatory Services*, 946 S.W.2d 130, 138 (Tex.App.--El Paso 1997, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002); *In re U.P.,* 105 S.W.3d at 230 (stating that children need permanency and security). A factfinder may infer that past conduct endangering the wellbeing of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). The evidence at trial established that Mother is an alcoholic, and she has relapsed frequently. After S.P. was returned to Mother in May 2015, Mother relapsed and the Department removed S.P. a second time. Mother did not complete her outpatient treatment program following this removal. Mother has engaged in a pattern of neglecting and abandoning the children while drinking. In this case, she left the house at 7:00 a.m. to go to a bar and she was unconcerned about her daughter's welfare when the police contacted her in the bar at 4:00 p.m. and told her that S.P. had wandered away from home. S.P. was dirty, her hair was matted, and she had urinated on herself. Mother has been twice convicted of abandoning a child with no intent to return. Further, all of the children have been removed from the home at least once, and Mother's parental rights to C.P. were terminated. There is also evidence that Mother did not visit S.P. consistently while this case was ongoing and it resulted in the cancellation of her visits. Based on the evidence of Mother's failure to comply with her court-ordered services, the trial court was free to infer that Mona' failure to complete her services indicates a continued danger to the child. We conclude that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parental abilities of a parent, a factfinder can consider the parent's past neglect or

past inability to meet the physical and emotional needs of the children.  *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002).  As set forth in our discussion of the second and third factors, there is ample evidence that Mother has in the past demonstrated an ability to meet the physical and emotion needs of the children.  The evidence related to this factor supports the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Mother participated in some of the services offered, but she refused to take the anger management classes a second time, and she did not complete the outpatient program following her relapse in August 2015.  The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future.  *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.--Fort Worth 2003, no pet.).

We will consider the sixth and seventh factors together.  The sixth factor is the plans for the child by those individuals or the agency seeking custody.  The seventh factor is the stability of the home or proposed placement.   The Department's plan is termination of parental rights and unrelated adoption.  The foster parents intend to adopt S.P.  Mother testified that she wants S.P. to be returned to live with her and J.P. who was the sole source of the family's income, although Mother has a claim pending for mental disability.  The evidence demonstrates that the foster parents have provided S.P. with a stable environment and they have provided for her needs.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one.  The evidence shows that Mother has a history of neglecting and abandoning all of her children, and this behavior continued even though the

Department became involved with the family and offered services, including those directed at addressing Mother's issue of alcohol abuse.

The ninth factor is whether there is any excuse for the parent's acts or omissions. Mother has at various times stated that she left S.P. with Father on the morning when S.P. wandered off by herself. As observed by the Department in its brief, Mother does not explain why she left her family to go to a bar at 7:00 that morning. We conclude that the evidence is legally sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the child's best interest.

We turn now to the factual sufficiency of the evidence supporting the best interest finding. There is some contrary or disputed evidence relative to the *Holley* factors. Mother did participate in some programs offered to her, including one outpatient program for alcohol abuse, but she relapsed. At trial, Mother testified that she had been sober for several months and she was taking medication for depression. While Mother's testimony indicated she had made improvements in her life in contrast with her past behavior, the evidence is not such that a reasonable factfinder could not have resolved it in favor of the challenged best interest finding. We conclude that the evidence is factually sufficient to support the trial court's determination that termination of Mother's parental rights to S.P. is in the child's best interest. Issues One, Two, and Three are overruled. The final order terminating Mother's parental rights to S.P. is affirmed.

## FATHER'S APPEAL

Father is represented on appeal by court-appointed counsel who has filed a brief in accordance with the requirements of *Anders v. California*, 386 U.S. 738, 741-44, 87 S.Ct. 1396, 1398-1400, 18 L.Ed.2d 493 (1967). Court-appointed counsel has concluded that, after a

thorough review of the record, Father's appeal is frivolous and without merit. In *Anders*, the Supreme Court recognized that counsel, though appointed to represent the appellant in an appeal from a criminal conviction, had no duty to pursue a frivolous matter on appeal. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. Thus, counsel was permitted to withdraw after informing the court of his conclusion and the effort made in arriving at that conclusion. *Id*. We have held that the procedures set forth in *Anders* apply to an appeal from a case involving the termination of parental rights when court-appointed counsel has determined that the appeal is frivolous. *See In re J.B.*, 296 S.W.3d 618, 619 (Tex.App.--El Paso 2009, no pet.); *In re K.R.C.*, 346 S.W.3d 618, 619 (Tex.App.--El Paso 2009, no pet.); *see also In re C.A.B.*, No. 08-08-00346-CV, 2009 WL 3152869, * 1 (Tex.App.--El Paso Sept.30, 2009, no pet.)(mem. op.).

Counsel's brief meets the requirements of *Anders* by advancing contentions that might arguably support the appeal. *See Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App. 1969); *Jackson v. State*, 485 S.W.2d 553 (Tex.Crim.App. 1972); *Currie v. State*, 516 S.W.2d 684 (Tex.Crim.App. 1974). Counsel has notified the Court in writing that he has delivered a copy of counsel's brief and the motion to withdraw to Father, and he has advised Father of his right to review the record, file a *pro se* brief, and to seek discretionary review. *Kelly v. State*, 436 S.W.3d 313, 318-20 (Tex.Crim.App. 2014)(setting forth duties of counsel). Father did not file a motion for access to the appellate record or otherwise notify the Court that he wished to review the record. Further, a *pro se* brief has not been filed.

Upon receiving an *Anders* brief, we are required to conduct a full examination of all of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 350, 109 L.Ed.2d 300 (1988). We have thoroughly reviewed the entire record, including the *Anders* brief, and we have found nothing that would arguably support an

appeal. We agree with counsel's professional assessment that the appeal is frivolous and without merit. Because there is nothing in the record that might arguably support the appeal, a further discussion of the arguable grounds advanced in the brief filed by court-appointed counsel would add nothing to the jurisprudence of the state. The final order terminating Father's parental rights to S.P. is affirmed.


September 14, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.