

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-21-00033-CV

IN THE INTEREST OF B.R.M.L., T.T.A.L., AND L.J.K.H., CHILDREN

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 44,128, Honorable James M. Mosley, Presiding

July 8, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Amy appeals from a judgment terminating her parental rights to her three children, B.L., T.L., and L.H.[1]  Abe also appeals from that judgment which terminates his parental rights to his child, L.H.

---

[1] To protect the privacy of the parties, we will refer to the appellant mother as "Amy," the appellant father as "Abe," and to the children by their abbreviated initials "B.L.," "T.L.," and "L.H."  *See* TEX. FAM. CODE. ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b).  The parental rights of "Andy," the father of B.L. and T.L., were also terminated in this proceeding but he did not appeal.

## Background

The children the subject of this suit are seven-year-old B.L., six-year-old T.L., and two-year-old L.H. Amy is the mother of these children. The father of B.L. and T.L. is Andy, and Abe is the father of L.H. The trial court conducted a final hearing in this case on February 9, 2021.

The Texas Department of Family and Protective Services presented evidence that the Department became involved with this family in November of 2019 after receiving a report alleging that Amy was neglectful in her supervision of B.L., T.L., and L.H. The report alleged that "an unrelated home member was seen with a needle in his arm," and B.L. had been dropped off by the school bus and no one was at home to receive her. There were also concerns of the children being unsupervised, domestic violence between Amy and Abe, and drug use in the home. Abe had been recently incarcerated in the Potter County Detention Center when the Department began its investigation. During the investigation, T.L. made an outcry of domestic violence between Amy and Abe, a methamphetamine pipe was found in the home, and B.L. and T.L. tested positive for methamphetamine. Amy admitted to the investigator that she recently used marijuana and then denied the admission. Amy declined to submit to drug testing at that time and refused to cooperate with the Department.

In January of 2020, the Department removed all three children from Amy's care and filed its petition for protection, conservatorship, and termination of parental rights of Amy and Abe. Following an adversary hearing, the Department was appointed temporary managing conservator of all three children.

2

The Department developed separate family service plans for Amy and Abe. The service plans set out several tasks and services for Amy and Abe to complete before reunification with their children could occur. These tasks and services included the following: complete a psychological evaluation and follow recommendations; maintain regular contact with the caseworker; abstain from the use of illegal drugs; submit to random drug screens; locate and maintain stable housing that is free from drugs and violence; locate and maintain stable employment; complete a psychosocial assessment and follow recommendations; attend individual counseling; take parenting classes; attend weekly batterer intervention classes (BIPP); participate in a substance abuse assessment at Outreach, Screening, Assessment, and Referral (OSAR) and follow recommendations; complete a mental health assessment at Texas Panhandle Centers; and attend visitation. Amy's plan also included a requirement that she participate in and complete the Women Against Violence (WAV) program.

Abe had been placed on deferred adjudication community supervision for possession of methamphetamine in July of 2016. Abe was in jail for allegedly violating the terms of his community supervision when the children were removed. Abe was released from jail in mid-January of 2020. In July, he was arrested for possession of a controlled substance. Abe remained in jail from mid-July until September. According to Abe, the possession charges were dropped. In October, he was arrested for evading arrest and outstanding warrants.

Abe did not maintain contact with the caseworker and "dropped off the radar" in June of 2020. The only service Abe completed was the mental health assessment. Abe

testified that he completed parenting classes but that he had not given his certificate of completion to the caseworker. He admitted that he has not provided random drug screens as requested by the Department. After his release from jail in September, Abe did not contact his caseworker to continue to work his services. Abe has not visited with L.H. since July of 2020, and he did not provide any financial support of L.H. while L.H. has been in care.

At the time of the final hearing, Abe was employed at West Texas Premiere Framing and living in Amarillo with his boss. Abe said he would be getting an apartment in the next week or two and that he would be able to take care of L.H.

Amy maintained contact with the caseworker for the first five to six months of the case and she actively participated in her service plan during that time. Amy satisfied the plan's requirement that she submit to a psychological evaluation, a psychosocial evaluation, an OSAR intake and assessment, and a WAV assessment. The Department added a requirement that Amy attend Alcoholics Anonymous (AA) after the OSAR assessment suggested that Amy was not truthful concerning her use of alcohol. The Department did not receive any documentation that Amy was employed, completed the TPC intake, or attended or completed parenting classes, individual counseling, or AA. Amy submitted to an initial hair follicle drug test in February of 2020, eleven days after she was requested to test. That test was negative. Amy failed to submit to drug testing on twelve occasions from March until the final hearing in February of 2021. Under the service plan, a refusal to submit to a test constitutes a positive drug test.

In October, Amy decided that she was not going to work with the Department any longer. She stopped returning phone calls to the caseworker and would not respond to requests for in-person visits to her home. It was also in October that Amy was arrested for evading arrest and unlawfully carrying a weapon.

In November, a permanency review hearing was held and Amy's visits with the children were suspended. Prior to November, Amy's visits with the children were sporadic. The caseworker testified that out of four or more scheduled visits per month, Amy would attend only one or two, and that Amy was not "engaging appropriately" in the visits. According to T.L., during visitation, Amy whispers in his ear that "he's a brat." The counselor for the children testified that T.L. has low self-esteem, struggles educationally, and "will tell you that he's a bad boy, [because] he's heard that repeatedly." T.L. and B.L. told the counselor that Amy uses bad words around them and that she is mean. Moreover, the visits with Amy affect their behavior. After a visit with Amy, the children become difficult to redirect, have difficulty following directions, and become "very hyper and dysregulated emotionally." B.L. and T.L. are adamant about not wanting to have visitation with Amy. The counselor recommended that further visitation with Amy is detrimental as to B.L. and T.L. and visitation should be ended for all three children if Amy was not working toward reunification.

Amy testified that she completed an OSAR assessment, attended AA, obtained a psychological evaluation, participated in individual counseling, completed an intake at Texas Panhandle Center, completed parenting classes, and started her BIPP classes. She received a certificate of completion for individual therapy and counseling. Amy

5

reported being self-employed at A.R. Caring Hands. Although Amy disputed much of the evidence offered by the Department concerning her completion of services, she did not introduce any documentation to support her testimony concerning the services she completed. She acknowledged that she has made bad choices in men and that she does not always pick "great men." She requested that the children be returned to her.

The counselor for the children testified to the emotional condition of B.L. and T.L. when she first began seeing them and how they progressed since removal from their mother's care. The counselor testified that B.L. and T.L. are "much calmer, happier. Respond well to adult instructions. They love school." The opinions of B.L. and T.L. as to visitation have not changed since November. B.L. and T.L. are bonded with their foster parents and they are concerned that they may have to leave the foster home. T.L. was very upset and worried about returning to the lifestyle that he lived when he was with his mother. T.L. has been aggressive and having behavioral issues at school due to his fear of being moved from the foster home. The counselor opined that moving the children from their placement would exacerbate that aggression. The counselor expressed concern that Amy and Abe have failed to complete their plans of service and believed it would be dangerous to send the children back to their care because they have not demonstrated that they have learned to provide a safe environment for the children.

The children are currently placed together with a foster family in Lubbock. The children are thriving in this placement and are bonded with their foster family. There is a home study pending on Amy's aunt and uncle in Oklahoma. If that home study is approved, the plan is to place the children in Oklahoma. If the home study is denied, the

foster placement is interested in becoming a permanent home for all three children. L.H. is almost two years old and he is meeting all of his developmental milestones. B.L. and T.L. desire their current home with the foster family to be their forever home.

The trial court terminated Amy's parental rights on the grounds set forth in Texas Family Code section 161.001(b)(1)(D), (E), (N), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (P). (West Supp. 2020).[2] The trial court further found termination of Amy's parental rights was in the best interest of B.L., T.L., and L.H. *See* § 161.001(b)(2). The trial court terminated Abe's parental rights on the grounds set forth in section 161.001(b)(1)(B), (D), (E), (N), (O), and (P). *See* § 161.001(b)(1)(B), (D), (E), (N), (O), and (P). The trial court also found that termination of Abe's parental rights was in the best interest of L.H. *See* § 161.001(b)(2). The trial court appointed the Department as the managing conservator of all three children.

## Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to

---

[2] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.,* 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.,*

8

902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id*. Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that

9

does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Analysis

Best Interest

Amy and Abe filed separate briefs. They do not contest the statutory basis for termination under section 161.001(b)(1). In their sole issue, Amy and Abe each challenge the factual and legal sufficiency of the evidence to support the best interest finding made under section 161.001(b)(2).

A determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as

well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

When the Department became involved with the family in the fall of 2019, B.L. and T.L. tested positive for methamphetamine and drug paraphernalia was found in the home. Amy admitted to marijuana use and submitted to one drug test in February of 2020. She was not compliant with the random drug tests required under the service plan and refused or failed to appear for twelve drug tests requested by the Department. Abe had a history of possession of methamphetamine and was arrested for a drug possession charge after the children were removed. Abe likewise failed to comply with the Department's request for drug testing throughout the case. A parent's refusal to submit to drug testing may be considered as evidence that he or she is continuing to abuse drugs. *In re T.R.L.,* No. 10-14-00290-CV, 2015 Tex. App. LEXIS 2178, at *14 (Tex. App.—Waco Mar. 5, 2015, no pet.) (mem. op.) ("A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs.*"); In re C.R.,* 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) (trial court could reasonably infer parent avoided taking drug tests because she was using drugs). A parent's drug use supports a finding that termination of parental rights is in the best interest of the child. *In re D.M.M.,* No. 14-16-00664-CV, 2017 Tex. App. LEXIS 47, at *13 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.).

The Department also presented evidence that Amy and Abe did not exercise their periods of possession with the children. Abe acknowledged that he had not visited L.H. in more than six months. Amy's visitation with the children was sporadic. In November, the trial court suspended Amy's visits after the children's counselor testified that Amy's visits were detrimental to B.L. and T.L. A parent's failure to visit a child during the six months preceding trial indicates the parent would not meet the child's emotional and physical needs in the future. *In re A.S.,* No. 02-16-00284-CV, 2017 Tex. App. LEXIS 715, at \*18 (Tex. App.—Fort Worth Jan. 26, 2017, pet. denied) (mem. op.).

Although the evidence showed that Amy completed some of the service plan's requirements, Amy did not comply with significant portions of her plan, including random drug testing, individual counseling, parenting classes, and AA meeting attendance. The only service that Abe completed was a mental health evaluation. Abe did not stay in contact with the Department after July of 2020 and admitted that he failed to participate in the services offered. Moreover, Abe was arrested several times during the pendency of the case, and he did not provide financially for L.H. The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). A trial court is permitted to consider a parent's drug use, inability to provide a stable home, and failure to comply with a family plan of service in its best interest determination. *In re S.B.,* 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.). This evidence weighs heavily in favor of the best interest finding as to both Amy and Abe.

13

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20. Here, Amy asked the trial court to return the children to her care or, alternatively, to place the children with her aunt and uncle. Amy did not articulate any clear plans for the children. Abe did not have a place of his own or any plan as to how he would care for L.H., a two-year-old. In contrast, the Department's plan for the children was permanence. The trial court heard testimony from the caseworker and the children's counselor that the children were bonded to their placement family. The Department is awaiting the outcome of a home study on a maternal aunt and uncle who live in Oklahoma. If the home study is not favorable, the foster placement desires to be a long-term placement for the children. B.L. and T.L. are extremely bonded to the foster parents and refer to them as "mom and dad." Further, B.L. and T.L. remain opposed to visiting with Amy and they fear being returned to her. LH. was too young at the time of trial to express his desires. The trial court heard evidence that the children were thriving and "doing fantastic" in the foster placement. The Department's plan would provide permanence and stability for the children and weighs heavily in favor of the trial court's conclusion that termination of Amy and Abe's parental rights is in the best interest of the children.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Amy's parental rights is in the best interest of B.L., T.L., and L.H. Amy's sole issue is overruled. We also conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the

14

trial court that termination of Abe's parental rights is in the best interest of L.H. Accordingly, we overrule Abe's sole issue.

## Conclusion

The judgment of the trial court terminating Amy and Abe's parental rights is affirmed.

Judy C. Parker
Justice