

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00197-CV

IN THE INTEREST OF E.G., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 81181L1, Honorable Jack M. Graham, Associate Judge Presiding

August 10, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

In this accelerated appeal, Appellant, Father, appeals the judgment of the trial court terminating his parental rights to E.G.[1] Appellee is the Texas Department of Family and Protective Services. By a sole issue, Father contends the evidence is insufficient to support the trial court's finding that termination of his parental rights is in the best interest of E.G. We affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we refer to the appellant as "Father" and the child by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

BACKGROUND

Three-year-old E.G. is the subject of this suit. The associate judge conducted a bench trial on the Department's petition requesting termination of parental rights on April 24, 2023, and the following evidence was presented.

In March of 2022, the Department filed its petition to modify prior order, for protection, conservatorship, and termination of parental rights of Mother[2] and Father as to their two-year-old son, E.G. E.G. was removed from Father's possession after the Department received a report that Mother and Father were smoking methamphetamine in a motel room where Father and E.G. were living. There were also concerns of recent domestic violence. During the investigation, Mother confirmed the use of methamphetamine with Father and disclosed that E.G. was present when Father kicked her in the face with his boot. According to Mother, she had been in a relationship with Father for four years and he was physically violent with her three or four times a year. As a part of the investigation, the Department requested that Father submit to a hair follicle drug test, but he declined. A hair follicle drug test indicated that E.G. was positive for high levels of methamphetamine. The Department was granted temporary managing conservatorship of E.G. and he was placed in a foster home.

The Department developed a family service plan for Father and the court ordered compliance with the plan requirements at a status hearing held in May of 2022. The service plan set out several tasks and services for Father to complete before reunification with E.G. could occur. Specifically, the Department's service plan required Father to

---

[2] Mother's parental rights were also terminated in this proceeding. Mother does not appeal.

complete domestic violence classes, attend individual therapy, engage in a substance abuse program, submit to random drug testing, and maintain stable employment and housing. Except for submitting to two drug screens, Father did not participate in the services offered by the Department. Beginning in December of 2022 and continuing through the trial date in April of 2023, Father was incarcerated on a child endangerment charge related to E.G.

The court heard evidence that Father was convicted of the following offenses: possession of a prohibited weapon—knuckles (October 24, 2018); possession of a dangerous drug, burglary of a vehicle, evading arrest or detention (April 3, 2019); credit card or debit card abuse (November 21, 2019); and evading arrest or detention (January 6, 2023). On October 27, 2022, Father pleaded guilty to felony child endangerment "by causing a specimen of [E.G.'s] hair to indicate the presence of methamphetamine" and was sentenced to six months in T.D.C.J. and a $1,500 fine.

At the time of trial, Father was incarcerated in T.D.C.J. with an expected release date of May 26, 2023. Before the Department's involvement, Father had primary custody of E.G. He often allowed Mother to visit with E.G. and would leave the child in her care. Father blamed Mother for E.G. testing positive for methamphetamine. According to Father, Mother told him she had been getting high and other people reported that to him as well. Father admitted that he relapsed and began using methamphetamine the night E.G. was removed from his care. He continued abusing methamphetamine until he was incarcerated on December 5, 2022. The last contact Father had with E.G. was in September of 2022.

Father completed an anger management course during his incarceration, but that was not a requirement of his service plan. He asked to enroll in services at the T.D.C.J. facility, but he was not allowed to because he was "not going to be [there] long enough." He testified he is going to "hit the ground running, as soon as [he] is released" and complete his services. Instead of termination, he is asking the court to appoint him as a possessory conservator of E.G.

The caseworker recommended termination of Father's parental rights because of Father's ongoing struggle with substance abuse and his inability to provide E.G. with a stable and safe home environment.

E.G. was placed with a maternal aunt and uncle. He is "doing great" and "developing well." E.G. understands directions, can play by himself, and has an excellent vocabulary. His placement is addressing all his needs, including medical, dental, and psychological. E.G. has demonstrated "a huge turnaround" from when he first entered care. The caseworker testified that E.G. is happy, healthy, and bonded to his aunt and uncle. E.G.'s aunt and uncle have been renovating their home in order to become licensed as a foster home so that they can adopt E.G. if parental rights are terminated.

The trial court terminated Father's parental rights to E.G. on the grounds of endangering conditions, endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O).[3]  The trial court also found that

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

termination was in the best interest of E.G. *See* § 161.001(b)(2). The Department was appointed the permanent managing conservator of E.G.

Father timely appealed the resulting judgment.

## STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations.

5

*Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of

fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d

7

570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

## ANALYSIS

### Best Interest

Father does not challenge any of the statutory predicate grounds for termination under section 161.001(b)(1). Rather, by a single issue, Father challenges the factual and legal sufficiency of the evidence to support the best interest finding made under section 161.001(b)(2).

A determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] "[T]he State need not prove all of the factors as a condition precedent to parental

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate

8

termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.— Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The record reflects that when the Department became involved, Father and E.G. were living in a motel and E.G. was exposed to his parents' drug use and domestic violence. Shortly after he was removed from his Father's care, E.G. tested positive for high levels of methamphetamine. Father tested positive for methamphetamine while the case was pending and he refused to engage in services directly related to the reasons for E.G.'s removal, such as a substance abuse assessment or drug treatment program. He used methamphetamine throughout the case until he was incarcerated in December of 2022 for child endangerment charges. Moreover, Father admitted to leaving E.G. in Mother's care despite knowing she was using illicit drugs. Father's course of conduct as an active drug user demonstrates that he is "not willing and able to provide the child with

---

that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

9

a safe environment—a primary consideration in determining the child's best interest." *In re A.C.,* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also In re E.R.W.,* 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A parent's drug use supports a finding that termination is in the best interest of the child."). A trial court is permitted to consider a parent's drug use, inability to provide a stable home, and failure to comply with a family plan of service in its best interest determination. *In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.). A parent's abuse of illegal drugs is relevant to multiple *Holley* factors, including a child's emotional and physical needs, the emotional and physical danger to the child, a parent's parental abilities, stability of the home, and a parent's acts or omissions pertinent to determining whether the parent-child relationship is improper. *See Holley*, 544 S.W.2d at 371–72. The evidence before the trial court concerning Father's substance use was significant and, thus, weighs heavily in favor of the trial court's best-interest finding.

The court also heard evidence from which it found that Father failed to complete court-ordered services. Although numerous programs were available for Father to help him improve his parental skills, he did not avail himself of them prior to his arrest and the services were not available to him in prison. A parent's failure to complete court-ordered services when his parent-child relationship is in jeopardy creates a reasonable inference that the parent is incapable of availing himself of programs that promote the best interest of the child, both now and in the future. The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent does not have the ability to motivate himself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). A trial court is permitted to consider a parent's failure to comply with a

10

family plan of service in its best-interest determination. *In re S.B.,* 207 S.W.3d at 887–88. This evidence weighs heavily in favor of the best-interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20. At the time of removal, Father did not have the resources or ability to care for E.G. and there was no evidence offered at trial suggesting that Father's circumstances had improved. The testimony indicates that Father interacted appropriately with E.G. during visits, but he has not visited E.G. since September of 2022. The Department presented evidence of Father's criminal history, and he was incarcerated at the time of the final hearing. He asked to be appointed a possessory conservator and wanted an opportunity to finish his service plan. Conversely, E.G.'s aunt and uncle have been providing a drug-free environment, and the stability, structure, security, and consistency that E.G. needs. The evidence shows that E.G. is strongly bonded with his aunt and uncle and has made tremendous progress since his placement with them. E.G. is doing well and his aunt and uncle plan to adopt him. At the time of trial, E.G. was only three years old and, thus, too young to testify about his desires. When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for E.G.'s adoption provides permanence and stability for E.G. and weighs heavily in

11

favor of the trial court's conclusion that termination of Father's parental rights is in the best interest of E.G.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Father's parental rights is in the best interest of E.G. We overrule Father's issue challenging the best-interest determination.

## CONCLUSION

Having overruled the sole issue raised by Father's appeal, we affirm the judgment of the trial court terminating Father's parental rights.

Judy C. Parker
Justice

12