

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00091-CV

---

IN THE INTEREST OF J.D., A CHILD

---

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 45,030, Honorable James M. Mosley, Presiding

---

July 25, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

In this appeal, appellants, Mother and Father, appeal the judgment of the trial court terminating their parental rights to J.D.[1]  The appellee is the Texas Department of Family and Protective Services.  Mother challenges the sufficiency of the evidence to support the trial court's findings under the predicate grounds, and the finding that termination is in the best interest of the child.  Father challenges the sufficiency of the evidence to support the

---

[1]To protect the privacy of the parties involved, we refer to the mother of the child as "Mother," the father of the child as "Father," and the child by her initials.  See TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

trial court's findings under the predicate grounds. We affirm the judgment of the trial court as to Mother and Father.

## BACKGROUND

In January of 2022, the Department became involved with J.D., a newborn, after allegations of neglectful supervision and illicit drug use by Mother during her pregnancy. The Department was provided information that Mother tested positive for methamphetamine and marijuana in March, May, and November of 2021. During the Department's investigation, Mother admitted she had used drugs in October and reported she was "in a dangerous situation" with Father. Mother and Father had recently separated after Father had been arrested for assaulting Mother. This assault incident occurred when Mother was pregnant with J.D. According to the investigator, Father had a history of illegal drug use, had been to prison for a drug offense, and had a prior conviction for assault causing bodily injury of a family member.

Mother has prior involvement with the Department. In August of 2021, the Department investigated an allegation that, during a period of visitation with her son, P.G.,[2] Mother huffed compressed air and gave permission to P.G. to inhale the compressed air. A few weeks before this allegation, Mother was arrested for possession of marijuana. In September of 2021, Mother was arrested for driving while intoxicated and striking a parked vehicle. At the time of her September arrest, it was alleged that

---

[2] The investigator testified that twelve-year-old P.G. was living with his paternal grandparents in Midland due to allegations of sexual abuse by Mother's previous boyfriend. At trial, Mother asserted her Fifth Amendment privilege and refused to answer any questions concerning her huffing compressed air in front of P.G.

2

Mother was huffing electronics cleaner.[3]

The Department filed its petition seeking conservatorship and termination of Mother's and Father's parental rights. Following an adversary hearing, the trial court found that it was contrary to the welfare of J.D. to remain in the home of Mother or Father and the Department was appointed temporary managing conservator of J.D. J.D. was placed with a foster family. A visitation schedule was implemented, and Mother and Father were permitted to visit with J.D. under the Department's supervision.

The trial court conducted a bench trial on the Department's petition in January and February of 2023, and the following evidence was presented.

After Father was arrested for assaulting Mother in October of 2021, she visited Father while he was in jail. Mother and Father were separated when J.D. was born in January. After the adversary hearing, they resumed their relationship. One of the addresses where they were living was a "garage filled with junk" with no running water or working bathroom. The caseworker described the conditions as "unlivable."

The Department developed family service plans for Mother and Father and the trial court ordered compliance with the plan's requirements. Among other things, the plans required Mother and Father to maintain a drug-free lifestyle and abstain from the use of illegal drugs; submit to random drug screens; complete a substance abuse assessment with Outreach, Screening, Assessment and Referral (OSAR) at the Texas Panhandle Center; participate in parenting classes; and maintain regular contact with the

---

[3] Mother asserted her Fifth Amendment privilege and refused to answer any questions about this matter at trial.

caseworker.  According to the service plans, the desired outcome upon completion was "to see [J.D.] grow up in a safe, stable home environment that is free from drugs and violence."

Father did not complete any services or maintain contact with the Department. The reason he gave for not working his service plan was because he was "work[ing] on his sobriety as far as drinking and whatever."  According to Father, he is currently sober. The last time he attended AA was six or nine months prior to the final hearing.  He admitted to using marijuana a week before trial but maintains he has never used marijuana around his children.  He has not used methamphetamine "in years."  Father did not have a relationship with J.D. and he only visited her once or twice.  On one occasion, he showed up late and was not allowed to visit.  Father testified that he "tried to contact [the caseworker] on several occasions" to get his visitation back but received no response.  The caseworker testified that her last contact with Father was in May of 2022.  At the time of trial, Father had been living with his cousin for the last six months. He is pursuing a plumbing apprenticeship and looking for jobs online.  Before that, he was working odd jobs and as a subcontractor.  If his parental rights were not terminated, he asked to maintain possessory rights and have J.D. placed with his sister.

Mother satisfied the plan's requirement that she obtain a psychosocial evaluation, participate in parenting classes, and complete a substance abuse assessment.  She submitted to some but not all of the drug screens requested by the Department.  In 2022, Mother tested positive multiple times for methamphetamine and marijuana in the following instances: May 5, urinalysis and hair follicle positive for methamphetamine and marijuana; June 28, urinalysis positive for marijuana; August 4, urinalysis positive for

methamphetamine and marijuana; September 22, urinalysis positive for marijuana and hair follicle positive for methamphetamine and marijuana; and November 17, hair follicle positive for methamphetamine and marijuana. The substance abuse assessment recommended that she complete an outpatient drug treatment program. Mother completed this program, but she resumed her use of methamphetamine and tested positive for methamphetamine when she gave birth to another child, E.D., on December 25, 2022. Mother refused to submit to drug screens on December 12, 2022, and January 9, 2023. Mother claimed that she last used methamphetamine in September of 2022. Mother testified that it was "unwise" and "very unhealthy" to smoke marijuana or use methamphetamine while pregnant. Mother asserted her Fifth Amendment privilege when asked if she used marijuana during the case. Mother has been living in a rent house since November of 2022, but she has not signed a lease. The man she rented the house from is in jail, and she has only paid him one month's rent. She has not paid any of the utility bills. Although Father used Mother's address and received mail there, she denied that Father was living in her home. Mother continues to have a relationship with Father but maintains that she does not know where Father is living. She is currently on maternity leave, and she lives off of her savings. Mother was last employed by Dairy Queen in October. Father is the father of E.D., who was born on December 25.

In December of 2022, the Department opened another investigation of Mother and Father when E.D. was born because Mother tested positive for methamphetamine. This case was pending at the time of trial.

The Department presented evidence of two incidents of domestic violence between Mother and Father. The first incident occurred on March 14, 2021. Borger

Police Detective Derrin Ginter testified that he was dispatched to an abandoned house to investigate a domestic disturbance involving Mother and Father. Father fled before the police arrived. Mother told Ginter that she and Father had argued over personal property items, and Father had struck her repeatedly in the face and picked her up by her throat. As a result of the altercation, Mother had a busted lip, marks on her nose, and red scratches on her face. Ginter observed "red irritations indicating hand or palm prints on [Mother's] face." He further described Mother as "extremely upset, visibly shaken," and crying. Ginter took Mother to the police department, and she was moved to a local crisis center for shelter. At trial, Mother and Father asserted their Fifth Amendment privilege and declined to answer any questions about this event.

The most recent incident of domestic violence occurred on October 12, 2021, when Mother was pregnant with J.D. Sergeant Carmona with the Hutchinson County Sheriff's Office testified that he was dispatched to an assault in progress which alleged that a female was screaming in the background and a male subject had taken her cell phone. Carmona kicked the door in and saw Father hiding. After Father was handcuffed, Mother told Carmona his services were no longer needed. As he spoke with Mother, Carmona observed that Mother was shaking and breathing rapidly. Mother had red marks and scratches on her chest and underneath her eye. According to Carmona, the marks were fresh and consistent with domestic violence. When Carmona asked if Father hit her, Mother replied that she was not going to say. Father described the argument as verbal only and denied that anything physical occurred. He admitted that Mother called 911 and that he took the phone out of her hand and threw it on the nightstand. He attributed the red marks on Mother's chest to an outing earlier in the day when they were "searching for

6

wood and chopping wood." Carmona arrested Father for an outstanding warrant, and he was later charged with assault of a pregnant woman. At trial, Mother asserted her Fifth Amendment privilege and refused to answer any questions about this event.

The Department presented evidence that Father was convicted of assault on a family member in 2006. According to the criminal complaint, Father caused the victim bodily injury by striking her in the face with his fist. In 2014, Father was convicted for possession of a controlled substance and sentenced to prison. He was released from prison in 2018.

The court heard evidence that the following charges were pending against Mother at the time of trial: aggravated assault with a deadly weapon (2018); possession of marijuana (7/23/2021); collision with an unattended vehicle (9/7/2021); driving while intoxicated (9/7/2021); unauthorized use of a motor vehicle (2/25/2022); and possession of a dangerous drug—acetaminophen/codeine pills (4/8/2022).

J.D. is currently placed in a foster home. She has experienced some developmental delays consistent with her in-utero exposure to methamphetamine. She receives speech therapy and occupational therapy. J.D. has built a great bond with her foster parents. The placement is going well and the foster home is meeting all of J.D.'s needs. The Department has no concerns with the placement. The foster parents intervened in the termination suit and plan to adopt J.D. if parental rights are terminated.

The trial court terminated Mother's parental rights to J.D. on the grounds of endangering conditions, endangerment, failure to comply with a court order that established actions necessary to obtain return of the child, and failure to complete a court-

7

ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P).[4] The trial court also found that termination was in the best interest of J.D. *See* § 161.001(b)(2). The trial court terminated Father's parental rights to J.D. on the grounds of abandonment, endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child. *See* § 161.001(b)(1)(B), (C), (E), (N), (O). The trial court also found that termination was in the best interest of J.D. *See* § 161.001(b)(2). The Department was appointed the permanent managing conservator of J.D.

Mother and Father timely appealed the resulting judgment.

## STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,*

---

[4] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

8

443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003)

(citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)).  Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests.  *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child.  § 161.001(b).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d at 264.  Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied).  "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."  *In re A.V.,* 113 S.W.3d at 362.  We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest.  *In re K.C.B.*, 280 S.W.3d at 894–95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted.  *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ).  The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences

10

therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

**Mother's Appeal**

The trial court terminated Mother's parental rights to J.D. on the grounds set out in section 161.001(b)(1)(D), (E), (O), and (P). Only one predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d at 362. Mother has conceded the evidence is sufficient as to predicate grounds (O) and (P) by not challenging them by her appeal. However, in light of the Texas Supreme Court opinion in *In re N.G.,* we review the trial court's findings under both subsections (D) and (E) when raised on appeal because of the potential consequences to Mother's parental rights in a future proceeding concerning a different child. *In re N.G.,* 577 S.W.3d 230, 235–37 (Tex. 2019) (per curiam).

11

Sufficiency of the Evidence Under Section 161.001(b)(1)(D) and (E)

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the termination of her parental rights under subsections (D) and (E).

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330–31 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the

12

child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). " Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not

13

be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009). Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d at 503.

Here, the Department presented evidence that Mother tested positive for methamphetamine and marijuana during her pregnancy with J.D., resumed use of these substances after the Department became involved with J.D., and tested positive for methamphetamine when E.D. was born in December of 2022. In determining whether a parent has engaged in a course of conduct endangering a child, we may look at the conduct both before and after the child's birth. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *See In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). In addition, Mother had multiple criminal charges pending including aggravated assault with a deadly weapon, possession of marijuana, driving while intoxicated, unauthorized use of a motor vehicle, and possession of a dangerous drug. "[I]ntentional criminal activity that exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of a child." *In re E.L.,* No. 09-15-00306-CV, 2016 Tex. App. LEXIS 885, at *16 (Tex. App.—Beaumont Jan. 28, 2016, pet. denied) (mem. op.). Abusive or violent conduct by a parent or other resident of the child's home, as well as illegal drug use and criminal

14

activity, support a conclusion that the child's surroundings endanger her physical or emotional well-being. *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re B.W.,* No. 07-19-00248-CV, 2019 Tex. App. LEXIS 9845, at *8 (Tex. App.—Amarillo Nov. 12, 2019, no pet.) (mem. op.).

The trial court could have considered Mother's failure to complete significant requirements of her service plan as part of its endangering conduct analysis under subsection (E). *In re H.G.,* No. 07-21-00278-CV, 2022 Tex. App. LEXIS 2687, at *20 (Tex. App.—Amarillo Apr. 25, 2022, pet. denied) (mem. op.). Mother testified that it was "unwise" and "very unhealthy" to smoke marijuana or use methamphetamine while pregnant. According to the caseworker, Mother failed to complete individual counseling, failed to submit to requested drug screens, and failed to maintain a safe and stable home for a minimum of six months. She attended an outpatient drug rehabilitation program but tested positive for methamphetamine shortly after completing the program.

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother knowingly placed or knowingly allowed J.D. to remain in conditions or surroundings which endangered her physical or emotional well-being and engaged in conduct which endangered J.D.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. We overrule Mother's first issue.

Best Interest

In her remaining issue, Mother challenges the factual and legal sufficiency of the evidence to support the best interest finding made under section 161.001(b)(2). A

15

determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d at 927. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[5] "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent

---

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The trial court was allowed to consider evidence that Mother used marijuana and methamphetamine during her pregnancy with J.D. and resumed using less than three months after J.D. was removed. Not long after Mother completed a drug rehabilitation program as a part of her court-ordered services, she again relapsed into drug use, testing positive for marijuana and methamphetamine less than a month before trial. She frequently tested positive for marijuana and methamphetamine while this case was pending and failed to appear for testing. Mother's court-ordered family service plan cautioned that her failure to appear for testing would be treated as a refusal to submit and would count as a positive test result. Her numerous failures to appear for testing therefore support a reasonable inference that Mother refused to submit to testing because the results would be positive. *See In re J.M.T.,* 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). As an active drug user, Mother's course of conduct demonstrates that she is "not willing and able to provide the child with a safe environment—a primary consideration in determining the child's best interest." *In re A.C.,* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also In re E.R.W.,* 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A parent's drug use supports a finding that termination is in the best interest of the child."). A trial court is permitted to consider a parent's drug use, inability to provide a stable home, and failure to comply with a family plan of service in its best interest determination. *In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.). Mother's ongoing use of marijuana and methamphetamine and her willingness to maintain a relationship with

17

Father, who admitted recent use of marijuana, suggests that similar conduct will occur in the future, thereby constituting evidence of emotional and physical danger to J.D. now and in the future. *In re V.A.,* No. 07-17-00413-CV, 2018 Tex. App. LEXIS 1521, at *13 (Tex. App.—Amarillo Feb. 27, 2018, no pet.) (mem. op.). The evidence before the trial court concerning Mother's substance use was significant and, thus, weighs heavily in favor of the trial court's best-interest finding.

The incidents of family violence between Mother and Father also support a finding that Mother cannot provide a safe and stable home for J.D. *See In re A.M.,* 495 S.W.3d 573, 581 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (relying in part on "history of assaultive conduct between the mother and father" in affirming decision that termination of father's rights was in child's best interest). Physical violence in the home leads to an unstable and unpredictable environment for children. *In re N.M.L.,* No. 07-17-00310-CV, 2018 Tex. App. LEXIS 607, at *14 (Tex. App.—Amarillo Jan. 19, 2018, pet. denied) (mem. op.). Mother has not taken the necessary steps to remedy the instability of the home or to address the threat of J.D. being again subject to physical violence. The trial court could have reasonably inferred that Mother, by continuing a relationship with Father, would continue her pattern and practice of providing an unstable and abusive home for J.D. that has the potential to compromise her emotional and physical well-being.

The court also heard evidence from which it found that Mother failed to complete court-ordered services. A parent's failure to complete the court-ordered services when her parent-child relationship is in jeopardy creates a reasonable inference that the parent is incapable of availing herself of programs that promote the best interest of the child, both now and in the future. The factfinder can infer from a parent's failure to take the

initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). A trial court is permitted to consider a parent's failure to comply with a family plan of service in its best-interest determination. *In re S.B.*, 207 S.W.3d at 887–88. This evidence weighs heavily in favor of the best-interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20. Mother testified that she is renting a two-bedroom home and has a baby bed for J.D. She asked to be appointed a possessory conservator and wanted an opportunity to finish her service plan. Mother prefers that J.D. be placed with Father's sister rather than remain with the foster parents. The Department caseworker testified that Mother has moved frequently during the one-year pendency of the case and has only been living at her current address less than three months. Moreover, Mother missed eleven visits with J.D. since the last court hearing in November. Further, Mother has multiple criminal charges pending and the possibility of significant jail time. Conversely, the foster family has been providing a drug-free environment for the past year, and the stability, structure, security, and consistency that J.D. needs. The evidence shows that J.D. is strongly bonded with her foster family. J.D. is doing well in the home and the foster family plans to adopt J.D. At the time of trial, J.D. was only twelve months old and, thus, too young to testify about her desires. When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by

19

them, and have spent minimal time with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for J.D.'s adoption provides permanence and stability for J.D. and weighs heavily in favor of the trial court's conclusion that termination of Mother's parental rights is in the best interest of J.D.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of J.D. We overrule Mother's second issue challenging the best-interest determination.

**Father's Appeal**

Sufficiency of the Evidence Under Section 161.001(b)(1)(E)

In his second issue, Father challenges the sufficiency of the evidence to support the trial court's finding that he engaged in conduct that endangered the physical or emotional well-being of J.D.

Father's brief characterizes him as the "non-offending parent" and minimizes the evidence showing his assaultive history and repeated incidents of violence against women, including Mother. The Department produced evidence that, in 2006, Father was convicted of assault family violence of a female family member. According to the criminal complaint, the victim received injuries when Father struck her in the face with his fist. In 2021, two incidents of domestic violence occurred between Mother and Father. Mother called 911 both times and, in both incidents, law enforcement officers who investigated observed injuries to Mother that were consistent with domestic violence. Notably, Mother

was pregnant with J.D. during the last incident, and Father was charged with assault arising out of the altercation. At the adversary hearing in January of 2022, Mother and Father had recently separated. Mother told the Department investigator that her relationship with Father was abusive and that she had left him because it was not a healthy relationship. At trial, the caseworker testified that a child could be endangered in a home where domestic violence is occurring. Despite the volatility in their relationship, Mother and Father resumed living together shortly after the adversary hearing.

Even though these assaultive offenses occurred before J.D. was born, they can still be considered as part of a voluntary, deliberate, and conscious course of conduct that had the effect of endangering J.D. *See In re R.W.,* 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). Domestic violence, lack of self-control, and propensity for violence may be considered as evidence of endangerment. *See In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Violent conduct directed at the other parent, even though not committed in the child's presence, may also be sufficient to demonstrate a course of conduct under section 161.001(1)(E). *See In re B.J.B.,* 546 S.W.2d 674, 677 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.)

"A parent's criminal background is particularly relevant if it demonstrates a tendency towards violence, especially violence against family members." *A.W. v. Tex. Dep't of Family & Protective Servs.,* No. 03-17-00048-CV, 2017 Tex. App. LEXIS 6509, at *7 (Tex. App.—Austin July 14, 2017, no pet.) (mem. op.). Moreover, courts have routinely considered evidence of parent-on-parent physical abuse in termination cases without requiring evidence that the conduct result in a criminal conviction. *See In re W.S.M.,* 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.) (parent physically

21

abused child's other parent); *In re D.C.,* No. 01-11-00387-CV, 2012 Tex. App. LEXIS 1638, at *25 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, pet. denied) (mem. op.) (parent's testimony other parent physically and mentally abused her supported parental termination under subsection (E)). And evidence that a parent has engaged in abusive or violent conduct in the past permits an inference that he will continue his violent behavior in the future. *Jordan v. Dossey,* 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (evidence of how parent treated other parent relevant regarding whether a course of conduct under subsection (E) has been established).

The trial court also heard Father's admission to using marijuana just days before trial, and he missed all of the drug screens requested by the Department. A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs during the proceedings. *See In re E.M.,* 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). A parent's use of drugs may qualify as an endangering course of conduct. *In re J.O.A.,* 283 S.W.3d at 346. The service plan required Father to submit to random drug testing and participate in a substance abuse assessment through OSAR, but he refused to comply with these requirements. Under the service plan, a refusal to submit to a drug test is treated as a positive drug test. Moreover, the record contains evidence indicating that Father struggled with alcohol abuse to the extent that he was unable to exercise his parenting responsibilities. Father's total failure to participate in any court-ordered services indicates his conscious indifference to achieving the desired outcome of J.D. growing up in a safe, stable home environment that is free from drugs and violence. The trial court may consider a parent's failure to complete a court-ordered service plan as part of its endangering conduct analysis. *See In re U.H.R.,* No. 07-18-

00318-CV; 2019 Tex. App. LEXIS 22, at *12–13 (Tex. App.—Amarillo 2019 Jan. 2, 2019, no pet.) (mem. op.). Even if a parent testifies that he has stopped abusing drugs or alcohol, a factfinder is not required to ignore a parent's long history of dependency and destructive behavior. *See In re R.W.,* 129 S.W.3d at 741.

Finally, we note that at the time of trial, J.D. was twelve months old. The only contact Father had with J.D. was supervised visitation once or twice at the beginning of this case. A parent's failure to regularly participate in visitation demonstrates a lack of concern for the child's well-being and can reasonably be found to be emotionally endangering to the child's well-being. *See In re A.F.,* No. 07-19-00435-CV, 2020 Tex. App. LEXIS 4152, at *17 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.).

Father's criminal history and repeated acts of domestic violence, when considered in conjunction with the evidence of his substance abuse, lack of relationship with J.D., and failure to comply with court-ordered services, constitute evidence of a deliberate, conscious course of conduct that endangered J.D.'s well-being.

Viewing the evidence in the manner required by each standard of review, we conclude that it is both legally and factually sufficient for a reasonable trier of fact to form a firm belief or conviction that Father engaged in a course of conduct which endangered the physical or emotional well-being of J.D. We overrule Father's second issue. Having found that the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E), we need not address Father's first, third, and fourth issues challenging the trial court's findings under section 161.001(b)(1)(B), (C), (N) and (O). *See In re A.V.,* 113 S.W.3d at 363; *see also* TEX. R. APP. P. 47.1. As Father does

23

not challenge the sufficiency of the evidence to support the best-interest finding, we affirm the trial court's order terminating Father's parental rights to J.D.

## CONCLUSION

Having overruled the issues raised by Mother's and Father's appeal, we affirm the judgment of the trial court terminating Mother's and Father's parental rights.


Judy C. Parker
Justice