

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00205-CV
No. 07-24-00206-CV
No. 07-24-00207-CV
No. 07-24-00215-CV

**IN THE INTEREST OF F.T., T.D., K.T., AND K.C., CHILDREN**

On Appeal from the 320th District Court
Potter County, Texas
Trial Court Nos. 097249-D-FM, 097250-D-FM, 097945-D-FM, and 097477-D-FM
Honorable Carry Baker, Associate Judge Presiding

November 5, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Mother, seeks reversal of the trial court's judgments terminating her parental rights to her children, F.T., T.D., K.T., and K.C.[1]  In her sole issue on appeal, Mother challenges the sufficiency of the evidence to support the trial court's finding that

---

[1] To protect the privacy of the parties, we refer to the appellant as "Mother," and to the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  The parental rights of the fathers of T.D., K.T., and K.C. were also terminated in this proceeding.  None of the fathers has appealed.

termination of her rights is in the best interest of the children. We affirm the judgments of the trial court.

## BACKGROUND

The Texas Department of Family and Protective Services became involved with Mother in September of 2022, when both Mother and K.T. tested positive for marijuana at the time of K.T.'s birth. At the hospital, Mother admitted to the Department investigator that she had used marijuana. She agreed to participate in a safety plan whereby her family members would supervise her with her children. After Mother and K.T. were released from the hospital, test results came back showing marijuana and amphetamine in K.T.'s meconium. Mother agreed to a drug screen, which was positive for methamphetamine, cocaine, and marijuana. Mother denied using methamphetamine. However, she acknowledged that she had taken Ecstasy after being released from the hospital.

The Department offered Mother family-based safety services, but Mother's family members were not willing to participate. The Department sought and obtained an emergency removal order. K.T., F.T., T.D., and K.C., all of whom were under the age of six, were placed in foster homes and screened for drugs. All four children tested positive for illegal substances.[2]

---

[2] K.T. tested positive for methamphetamine, cocaine, and marijuana; F.T. tested positive for methamphetamine and cocaine; T.D. tested positive for cocaine; and K.C. tested positive for methamphetamine.

The Department developed a service plan that required Mother to obtain stable housing and employment; participate in visitation with the children; complete and follow recommendations of an outreach, screening, assessment, and referral (OSAR) program; maintain a drug-free lifestyle; submit to random drug screenings; complete a psychosocial assessment and follow recommendations; attend individual counseling sessions; and complete parenting classes. The plan was made an order of the court and Mother was made aware of the order.

Mother completed an OSAR in November of 2022. However, because Mother continued to test positive for drugs, she was asked to complete another OSAR, which she did not do. Mother missed multiple drug screens during the pendency of the case. Of the drug screens she completed, Mother tested negative only one time. Mother participated in a psychosocial assessment but did not complete the recommendations. She completed her parenting classes and participated in visitation with the children until February of 2024.

Mother did not attend the final hearing in April of 2024. Mother's caseworker testified that Mother's drug use was the "main issue" in the case. She further testified that, based on documentation and Mother's own admission, Mother had not stopped using drugs. The caseworker believed it was in the best interest of the children to terminate Mother's parental rights due to Mother's continued drug use and failure to complete services. The attorney and guardian ad litem for the children agreed that termination of Mother's parental rights was in the best interest of all four children.

At the conclusion of the hearing, the trial court terminated Mother's rights to her children based on the predicate grounds enumerated in Texas Family Code section 161.001, subsections (b)(1)(D), (E), and (O) and the best-interest ground in subsection (b)(2).[3] Mother brought this appeal.

## APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit her parental rights by her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of

---

[3] Further references to "section" or "§" are references to the Texas Family Code.

fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript,

5

the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

## ANALYSIS

In her sole issue, Mother challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2). She does not contest the predicate grounds for termination under section 161.001(b)(1).

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96

6

S.W.3d at 266.  We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding.  *Id.*  If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.  *Id.*

A determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.).  Appellate courts examine the entire record to decide what is in the best interest of the child.  *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013).  There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship.  *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent.  *Id.*  "[T]he State need not prove all of the factors

as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The trial court was allowed to consider evidence in support of the predicate grounds in making the best-interest determination and Mother does not challenge those findings on appeal. The trial court's unchallenged predicate grounds are probative in the best-interest determination, *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied), and are significant in our review of the best-interest finding.

*Emotional and Physical Needs of Children; Emotional and Physical Danger to Children*

In this case, the Department's main concern was Mother's ongoing substance abuse. A parent's continued drug use demonstrates an inability to provide a stable environment for the child and an inability to provide for the child's emotional and physical needs. *In re E.M.*, 494 S.W.3d 209, 222–23 (Tex. App.—Waco 2015, pet. denied). The

8

evidence showed that Mother tested positive for illegal substances on multiple occasions during the pendency of the case. In a drug screen performed less than two weeks before trial, Mother tested positive for amphetamine, methamphetamine, and marijuana. Furthermore, Mother failed to appear for several drug tests requested by the Department. Those failures are considered positive results under her service plan. *In re T.R.L.*, No. 10-14-00290-CV, 2015 Tex. App. LEXIS 2178, at *14 (Tex. App.—Waco Mar. 5, 2015, no pet.) (mem. op.) ("A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs."); *In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) (trial court could reasonably infer parent avoided taking drug tests because she was using drugs). A parent's drug use supports a finding that termination of parental rights is in the best interest of the child. *In re E.C.R.*, 638 S.W.3d 755, 768 (Tex. App.—Amarillo 2021, pet. denied). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d at 927.

*Mother's Parental Abilities and Programs Available to Assist Her*

Although Mother completed some of the requirements of her service plan, she failed to comply with others, including drug testing and individual counseling. Mother began a 30-day program at a substance-abuse treatment facility but left the facility before completing the program. The caseworker testified that although Mother made some progress during the first six months of the case, Mother had not worked on any of her court-ordered services since March of 2023, more than a year before the final hearing. Mother participated in visits with the children, although she regularly arrived late. At her last visit with the children in February of 2024, Mother used "belligerent words" and "cause[d] a scene" in front of other families, which upset the children.

9

A trial court may consider a parent's failure to comply with a plan of service in making its best-interest determination. *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.— Fort Worth 2006, no pet.); *see also In re D.A.*, No. 02-22-00260-CV, 2022 Tex. App. LEXIS 9346, at *35 (Tex. App.—Fort Worth Dec. 22, 2022, pet. denied) (mem. op.) ("Although evidence showed that Mother had completed some steps of the service plan, her missed drug tests, failed drug tests, [and] excuses to delay tests . . . could have led the trial court to find that Mother had gone through the motions in completing her service plan but had not made lasting changes to benefit her children."). The factfinder can infer from a parent's failure to take the initiative to utilize available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). The trial court could have also found that Mother's failure to appear at the termination hearing indicated a lack of motivation to parent her children. *See In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.) ("The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent."); *see also In re K.G.-J.W.*, No. 01-17-00739-CV, 2018 Tex. App. LEXIS 1664, at *29 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, pet. denied) (mem. op.) ("[T]he record shows that Mother was aware of the trial date but nonetheless failed to appear; thus, demonstrating a lack of motivation to be [the child's] parent."). This evidence weighs heavily in favor of the best-interest finding.

*Stability of Home or Proposed Placement*

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The stability of the

proposed home environment is an important consideration in determining whether termination of parental rights is in a child's best interest. *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). Mother's service plan reflected that she did not have stable housing or stable employment in the months before trial. The evidence at trial indicated that Mother had recently been staying with a friend and that she had been staying with a different friend or relative the month before. Mother provided no plan for the children's care and did not demonstrate she could provide them a safe and stable home. The Department planned to place F.T. with his father, who appeared at trial and testified that he wanted F.T. to be placed in his home. F.T.'s father was employed, had stable housing, and had a daycare plan in place for F.T.[4] The Department's plan for T.D., K.T., and K.C. was to find an adoptive home that would allow the three children to stay together. The caseworker stated that the Department was "looking into" a prospective home at the time of trial. Because there was no evidence showing that Mother had any plan for the children, this factor weighs in favor of the best-interest determination.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the best interest of F.T., T.D., K.T., and K.C. *See In re S.B.*, 207 S.W.3d at 887–88 (parent's drug use, inability to provide stable home, and failure to comply with service plan supported best-interest finding). We overrule Mother's challenge to the trial court's finding.

---

[4] F.T.'s father was appointed as F.T.'s permanent managing conservator.

11

## CONCLUSION

Having overruled Mother's sole issue on appeal, we affirm the judgments of the trial court.


Judy C. Parker
Justice