

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00190-CV

---

## IN THE INTEREST OF E.C.-L.H.-D., A CHILD

---

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 45,400, Honorable James M. Mosley, Presiding

---

November 5, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Mother and Father, appeal from the trial court's order terminating their parental rights to their son, E.C.-L.H.-D., in a suit brought by Appellee, the Texas Department of Family and Protective Services.[1]  Mother challenges the sufficiency of the evidence to support the trial court's findings under the predicate grounds and the finding that termination is in the best interest of the child.  Father challenges the sufficiency of the evidence to establish reasonable efforts to return the child to him and the sufficiency

---

[1]To protect the privacy of the parties involved, we refer to the child by the initials E.D., and family members by their relationship to the child.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

of the evidence to support the predicate grounds. We affirm the trial court's judgment of termination as to Mother and Father.

## BACKGROUND

Mother and Father have a history of involvement with the Department. In January of 2022, the Department investigated allegations of neglectful supervision of a newborn, J.D., due to Mother's drug use and concerns of domestic violence between Mother and Father.[2] During the investigation, the Department learned that in October of 2021, Father assaulted Mother while she was pregnant with J.D. The Department's involvement in that case concluded with termination of Mother's and Father's parental rights to J.D. in February of 2023. While that case was pending, the Department investigated new allegations beginning in December of 2022 when Mother and newborn E.D. tested positive for methamphetamine.[3] On December 28, 2022, the Department filed its petition for protection, conservatorship, and termination of Mother's and Father's parental rights as to E.D. Following an adversary hearing, the Department was appointed temporary managing conservator and E.D. was placed in a foster home with his sister, J.D.

The trial court conducted a bench trial on the Department's petition in May of 2024. The following evidence was presented at the termination trial.

Mother and Father have been in an "on and off" relationship for three years and both parties admitted to domestic violence between them. Mother described her

---

[2] J.D. was born on January 12, 2022.

[3] E.D. was born on December 25, 2022.

relationship with Father as tumultuous.

The Department developed a family service plan for Mother and the trial court ordered compliance with the plan's requirements. Among other things, the plan required Mother to maintain stable housing and employment, participate in individual counseling, abstain from the use of illegal drugs, submit to random drug screens, complete rational behavior therapy (RBT), and participate in parenting classes.

Mother completed individual counseling. She was continuing to see her counselor and attending domestic violence classes at the time of the final trial. She did not complete RBT or parenting classes. Mother is bonded with E.D. and visited him weekly. Throughout the case, Mother failed to establish housing or employment stability. Mother moved to a new home a few weeks before the final hearing. When the caseworker saw the home, it was in disarray, and there was no room set up for E.D. As for her employment, she recently obtained a job at the Borger Country Club in the maintenance department. Before that, she was employed at Dirt Cheap Lawns. Mother failed to provide any pay stubs to verify her employment at either job.

In June of 2023, Mother enrolled in an inpatient substance abuse treatment program as required by her service plan. She completed the treatment program, but resumed her methamphetamine use shortly after her discharge from treatment. She consistently tested positive for methamphetamine and marijuana throughout the case. Mother's hair follicle test was positive for methamphetamine and marijuana on the following dates: May 9, August 8, and November 1, 2023, and January 30, 2024. In 2024, her urinalysis was positive for methamphetamine and marijuana on January 22, and positive for methamphetamine and amphetamine on March 8. Since 2019, Mother's

3

longest period of sobriety is seven months. She admitted that she used drugs during her pregnancies with E.D. and J.D.

Father was served with the current termination suit during J.D.'s termination trial. According to Father, he did not trust the Department, so he did not pursue any contact with Department representatives. Concerning that time, Father testified, "I wasn't stable. Me and [Mother's]—after [J.D.] got taken, our rights were taken, our relationship pretty much went out the window. I didn't have a place to stay, a residence. My phone was—I didn't have money or finances to keep my phone on through—just the trouble of my addiction and troubles."

The Department produced evidence that in 2006, Father was convicted of misdemeanor assault after striking a woman in the face with his closed fist. In October of 2021, Father was charged with assaulting Mother when she was pregnant with J.D. After E.D. came into the Department's care, on May 4, 2023, Mother and Father were involved in an altercation in which Father broke Mother's phone, "grabbed her by the neck" and "push[ed] her to the ground."[4] This incident led to Father's indictment for the third-degree felony offense of assault family violence with a previous conviction. Father was incarcerated several times during the pendency of the case, including in May, August, and November of 2023. The caseworker testified to her unsuccessful efforts to locate Father and engage him in services. In February of 2024, the caseworker was notified that Father was in the Hutchinson County Jail. In March of 2024, as part of a plea bargain, Father pleaded guilty to the third-degree felony offense of possession of a

---

[4] Mother testified that this incident occurred after she completed drug rehabilitation treatment. She said that she and Father had not reconciled, but were merely living in the same house.

controlled substance (methamphetamine) committed on April 16, 2023, and a second-degree felony offense of burglary of a habitation committed on November 11, 2023. He was sentenced to ten years in prison with his confinement suspended and he was placed on community supervision for five years. As a condition of his supervision, he was required to complete a Correctional Rehabilitation and Treatment Center (CRTC) program. At the time of trial, Father was incarcerated in the Hutchinson County Jail awaiting transfer to a CRTC. Father testified that he is not in a position currently to take care of E.D. because of his incarceration and probation requirements.

E.D. was sixteen months old at the time of trial. He is placed in a foster home with his sister, J.D. E.D. appears happy and he is "perfectly healthy." He is doing very well in his placement and is bonded with the foster parents. The foster parents intend to adopt E.D. and J.D. if parental rights are terminated.

The trial court terminated Mother's parental rights to E.D. on the grounds of endangering conditions, endangerment, prior termination of parental rights based on endangering conditions or conduct, failure to comply with a court order that established actions necessary to obtain return of the child, and continued substance abuse after completion of a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (O), (P).[5] The trial court terminated Father's parental rights to E.D. on the grounds of endangering conditions, endangerment, prior termination of parental rights based on endangering conditions or conduct, and constructive abandonment. *See* § 161.001(b)(1), (D), (E), (M), (N). The trial court also found that

---

[5] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

termination was in the best interest of E.D.  *See* § 161.001(b)(2).  The Department was appointed the permanent managing conservator of E.D.  Mother and Father timely appealed the resulting judgment.

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."  *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002).  To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  *Id.*  We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts.  *Id.*  Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true.  *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014).  If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse.  *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.  *In re J.F.C.,* 96 S.W.3d at 266.  We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations.  *Id.*  We must also consider whether disputed evidence is such that a reasonable factfinder

6

could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id*.

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and

termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written

transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

Reasonable Efforts to Return Child

In his first issue, Father contends there was legally and factually insufficient evidence that the Department made reasonable efforts to return E.D. as required by section 161.001(f). That section provides:

> (f) In a suit for termination of the parent-child relationship filed by the Department of Family and Protective Services, the court may not order termination of the parent-child relationship under Subsection (b)(1) unless the court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that:
>
> (1) the department made reasonable efforts to return the child to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent; or
>
> (2) reasonable efforts to return the child to the parent, including the requirement for the department to provide a family service plan to the parent, have been waived under Section 262.2015.

§ 161.001(f).

The legislature recently amended section 161.001 to include the additional requirement that the trial court make a finding concerning reasonable efforts the Department made to return the child to the parent. However, this amendment only applies to suits filed on or after September 1, 2023. Act of May 22, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7–8, 2023 Tex. Gen. Laws 1644, 1644–45 (codified at Tex. Fam. Code Ann. § 161.001(f)). The petition to terminate the parent-child relationship in this case was filed on December 28, 2022, prior to September 1, 2023, when the amendment took effect. *Id.* We apply the law in effect on the date the suit was filed. *See In re Z.E.C.*, No. 08-23-

9

00282-CV, 2024 Tex. App. LEXIS 1404, at *26 (Tex. App.—El Paso Feb. 26, 2024, no pet.) (mem. op.). Accordingly, we overrule Father's first issue.

<u>Sufficiency of the Evidence Under Subsections 161.001(b)(1)(D) and (E)</u>

In Mother's first issue and Father's third issue, they challenge the legal and factual sufficiency of the evidence to support termination of their parental rights under subsections 161.001(b)(1)(D) and (E). We review the trial court's findings under both subsections (D) and (E) when raised on appeal because of the potential consequences to a parent's parental rights in a future proceeding concerning a different child. *In re N.G.,* 577 S.W.3d 230, 235–37 (Tex. 2019) (per curiam). Because the evidence pertaining to subsections (D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-

10

than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330–31 (Tex. App.— Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). " Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.R.J.M.*, 280 S.W.3d at 502. The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does

11

not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009).

Here, the Department presented evidence that Mother had prior involvement with the Department and a history of substance abuse since 2019. At the time that E.D. was removed, Mother and Father had a pending termination case involving another child, J.D. As to E.D., Mother used methamphetamine during her pregnancy and she and E.D. tested positive for methamphetamine when E.D. was born in December of 2022. After E.D.'s birth, Mother tested positive for marijuana and methamphetamine on multiple occasions, including before and after she completed an inpatient substance abuse treatment program. In determining whether a parent has engaged in a course of conduct endangering a child, we may look at the conduct both before and after the child's birth. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *See In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). Additionally, the trial court could

12

have considered Mother's failure to complete significant requirements of her service plan as part of its endangering conduct analysis under subsection (E). *In re H.G.,* No. 07-21-00278-CV, 2022 Tex. App. LEXIS 2687, at *20 (Tex. App.—Amarillo Apr. 25, 2022, pet. denied) (mem. op.). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024). Those risks are present here as Mother did not complete domestic violence classes, did not have stable housing, and had difficulty maintaining employment.

After E.D. was removed, Father was uncooperative with the Department. He candidly admitted that he was unstable and troubled by his addiction; he had no money, phone, or place to live. The Department produced evidence concerning the tumultuous relationship between Mother and Father including two incidents of domestic violence. During the pendency of the current case, Father engaged in criminal activity and was incarcerated for three felony offenses: assault, possession of a controlled substance, and burglary. Abusive or violent conduct by a parent or other resident of the child's home, as well as illegal drug use and criminal activity, support a conclusion that the child's surroundings endanger his physical or emotional well-being. *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re B.W.,* No. 07-19-00248-CV, 2019 Tex. App. LEXIS 9845, at *8 (Tex. App.—Amarillo Nov. 12, 2019, no pet.) (mem. op.). Finally, Father was incarcerated at the time of the final hearing and unable to visit with E.D., establish a safe and stable home, or have employment. "When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the [child], a factfinder reasonably can find endangerment to the

child's physical or emotional well-being under (D) and (E)." *In re R.R.A.,* 687 S.W.3d at 281.

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother and Father knowingly placed or knowingly allowed E.D. to remain in conditions or surroundings which endangered his physical or emotional well-being and engaged in conduct which endangered E.D.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. We overrule Mother's first issue and Father's third issue.

Having found that the evidence is legally and factually sufficient to support the trial court's finding under subsections 161.001(b)(1)(D) and (E), we need not address the portion of Mother's first issue challenging the trial court's findings under (O) and (P). Only one predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d at 362. Mother has conceded the evidence is sufficient as to predicate ground (M) by not challenging that ground by her appeal.

Having found that the evidence is legally and factually sufficient to support the trial court's finding under 161.001(b)(1)(D) and (E), we need not address the portion of Father's first issue challenging the trial court's findings under 161.001(b)(1)(N), or his second issue challenging the trial court's findings under subsection 161.001(b)(1)(M). *See In re A.V.,* 113 S.W.3d at 362. As Father does not challenge the sufficiency of the evidence to support the best-interest finding, we affirm the trial court's order terminating Father's parental rights to E.D.

<u>Best Interest</u>

In her second issue, Mother challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2).  A determination of best interest necessitates a focus on the child, not the parent.  *In re B.C.S.,* 479 S.W.3d at 927.  Appellate courts examine the entire record to decide what is in the best interest of the child.  *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013).  There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship.  *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[6]  "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'"  *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)).  Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *See In re E.C.R.*, 402 S.W.3d at 249.  The best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence.  *In re N.R.T.,*

---

[6] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

15

338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The trial court was allowed to consider evidence that Mother used methamphetamine during her pregnancy with E.D. and tested positive for methamphetamine and marijuana multiple times during the case. Moreover, Mother had a sporadic work history, and she was unable to maintain stable housing. Not long after Mother completed an inpatient drug rehabilitation program as a part of her court-ordered services, she again relapsed into drug use, testing positive for marijuana and methamphetamine shortly before trial. By her own admission, Mother has a history of substance abuse since 2019. As an active drug user, Mother's course of conduct demonstrates that she is "not willing and able to provide the child with a safe environment—a primary consideration in determining the child's best interest." *In re A.C.,* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also In re E.R.W.,* 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A parent's drug use supports a finding that termination is in the best interest of the child."). A trial court is permitted to consider a parent's drug use, inability to provide a stable home, and failure to comply with a family plan of service in its best-interest determination. *In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.). Mother's ongoing use of marijuana and methamphetamine and her association with family members who use methamphetamine suggests that similar conduct will occur in the future, thereby constituting evidence of emotional and physical danger to E.D. now and in the future. *In*

16

*re V.A.,* No. 07-17-00413-CV, 2018 Tex. App. LEXIS 1521, at *13 (Tex. App.—Amarillo Feb. 27, 2018, no pet.) (mem. op.). The evidence before the trial court concerning Mother's substance use was significant and, thus, weighs heavily in favor of the trial court's best-interest finding.

The incidents of family violence between Mother and Father also support a finding that Mother cannot provide a safe and stable home for E.D. *See In re A.M.,* 495 S.W.3d 573, 581 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (relying in part on "history of assaultive conduct between the mother and the father" in affirming decision that termination of father's rights was in children's best interest). Physical violence in the home leads to an unstable and unpredictable environment for children. *In re N.M.L.,* No. 07-17-00310-CV, 2018 Tex. App. LEXIS 607, at *14 (Tex. App.—Amarillo Jan. 19, 2018, pet. denied) (mem. op.).

The court also heard evidence from which it found that Mother failed to complete court-ordered services. A parent's failure to complete court-ordered services when her parent-child relationship is in jeopardy creates a reasonable inference that the parent is incapable of availing herself of programs that promote the best interest of the child, both now and in the future. The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). A trial court is permitted to consider a parent's failure to comply with a family plan of service in its best-interest determination. *In re S.B.,* 207 S.W.3d at 887–88. This evidence weighs heavily in favor of the best-interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in a child's best interest. *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *In re J.D.*, 436 S.W.3d at 119–20. The evidence at trial indicated that Mother had a history of instability in housing and employment. The caseworker visited Mother's newest residence shortly before trial and found the home in "disarray" and E.D.'s room not set up. Mother testified that she had five jobs since January of 2022, and she was working a seasonal job at the time of trial. Despite her inability to maintain sobriety, she requested that the trial court return E.D. to her care because "[she] deserve[s]" her child. Conversely, the foster family has been providing a drug-free environment for the past eighteen months, and the stability, structure, security, and consistency that E.D. needs. The evidence shows that E.D. is placed in a foster home with his sister, J.D. E.D. is strongly bonded with his foster family. E.D. is doing well in the home and the foster family plans to adopt E.D. and J.D. At the time of trial, E.D. was only sixteen months old and, thus, too young to testify about his desires. When a child is too young to express his desires, the factfinder may consider whether the child has bonded with the foster family, is well-cared for by them, and has spent minimal time with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for E.D.'s adoption provides permanence and stability for E.D. and weighs heavily in favor of the trial court's conclusion that termination of Mother's parental rights is in the best interest of E.D.

Applying the applicable *Holley* factors to the evidence, we conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of E.D. *See In re S.B.*, 207 S.W.3d at 887–88 (parent's drug use, inability to provide stable home, and failure to comply with service plan supported best-interest finding). We overrule Mother's second issue challenging the best-interest determination.

## CONCLUSION

Having overruled the issues raised by Mother's and Father's appeal, we affirm the judgment of the trial court terminating Mother's and Father's parental rights.

Judy C. Parker
Justice